[Cite as *Beeper Vibes, Inc. v. Dir., Ohio Dept. of Job & Family Servs.*, 2012-Ohio-625.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BEEPER VIBES, INC. | : | |
| | : | Appellate Case No. 24690 |
| | : | |
| Plaintiff-Appellant | : | Trial Court Case No. 2010-CV-9786 |
| | : | |
| v. | : | |
| | : | |
| DIRECTOR, OHIO DEPARTMENT OF | : | (Civil Appeal from |
| JOB & FAMILY SERVICES, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of February, 2012.

. . . . . . . . . . .

RICHARD B. REILING, Atty. Reg. #0066118, 5045 North Main Street, Suite 320-D, Dayton, Ohio 45415
    Attorney for Plaintiff-Appellant

ROBIN JARVIS, Atty. Reg. #0069752, 1600 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Beeper Vibes, Inc., appeals from a decision of the Montgomery County

Court of Common Pleas affirming a decision of the State of Ohio Unemployment Compensation Review Commission. Beeper Vibes contends that: (1) the trial court erred by finding that it had failed to present evidence of the applicable industry standard for sales performance by the unemployment compensation claimant in this case; and (2) the trial court erred by finding that it had failed to provide evidence of the claimant's "bad attitude."

{¶ 2} The record reflects that the trial court committed neither error. It noted that Beeper Vibes "provided no documentation" of an industry standard, which is true. It also noted that "a review of the record does not reveal any specific examples of [the claimant's] attitude affecting a particular sale," which is also true. Furthermore, both of these findings are peripheral to the trial court's decision. The matter had been remanded to the Review Commission for a factual finding whether the minimum sales quota set for the claimant was reasonable. After a hearing, the Review Commission found that the quota was not reasonable for the location where the claimant worked. Beeper Vibes' own documents submitted at the original hearing provide support for the Commission's finding. Consequently, the trial court did not err by affirming the Review Commission's decision on remand.

### I. Beeper Vibes Terminates its Salesman for Underperforming.

{¶ 3} John McAnespie, a veteran salesman of thirty years, was employed by Beeper Vibes as a salesman of cell phones at a kiosk in the Lancaster Mall. He began his employment on April 9, 2008. The kiosk out of which he worked was located 80 yards from a Verizon cell phone store.

{¶ 4} When McAnespie started with Beeper Vibes, it had no sales quota.

After he started, in January, 2009, Beeper Vibes instituted a sales quota of twenty-five sales per month. Sales could be of either new or used cell phones. McAnespie failed to meet this quota during the months of April, May, June, August, and September, 2009. On October 1, 2009, his employment was terminated because he had failed to meet his quota.

## II. The Salesman Files for Unemployment Compensation.

{¶ 5} McAnespie filed for unemployment compensation. His claim was allowed, and Beeper Vibes appealed to the Review Commission. The Review Commission held a hearing by telephone. Beeper Vibes participated in the hearing by telephone by a corporate representative, Nathaniel Belvo, and a witness, Austin Davidson. McAnespie did not participate in the hearing.

{¶ 6} Beeper Vibes submitted documents to the hearing officer by facsimile transmission. One of these documents reflects that during the month of September, 2009, the month immediately preceding McAnespie's discharge, he outsold all of the other employees at this location substantially. McAnespie had twelve sales, one of the other employees had nine sales, another employee had five sales, and two other employees had one sale each. At a later hearing, McAnespie testified that all of the employees at the location worked between 35 and 40 hours a week. The document submitted by Beeper Vibes at the hearing also reflected that 45 of its 77 employed salespersons had failed to meet the minimum quota of 25 sales.

{¶ 7} The Review Commission found that McAnespie had been discharged without just cause, and allowed the claim.

### III.   Beeper Vibes Appeals to the Common Pleas Court.

{¶ 8}   Beeper Vibes filed an appeal from the decision of the Review Commission with the Montgomery County Common Pleas Court, under R.C. 4141.282.   The trial court rejected the Review Commission's conclusion that the minimum requirement of 25 sales per month could not be expected of McAnespie because that requirement was added after his initial hire.   The trial court held that requirements can be changed during an employee's tenure so long as they are reasonable.

{¶ 9}   Having rejected the Review Commission's analysis, the trial court then began its own analysis by citing the four-part test for just cause set forth in *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St. 3d 694, 1995-Ohio-206,   653 N.E.2d 1207, fourth paragraph of syllabus:

> An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements of the job did not change substantially since the date of the original hiring for that particular position.

{¶ 10} The trial court found that the first, second, and fourth parts of the *Tzangas* test were clearly established by the evidence in the record of the hearing before the Review Commission, but that the record was silent on the third issue – whether the employer's expectations of its employee were reasonable.   The trial court remanded the matter to the

Review Commission "for the specific factual determination of whether the sales expectations placed upon Mr. McAnespie were reasonable."

{¶ 11} No appeal was taken from the trial court's judgment remanding the matter to the Review Commission.

### IV. The Remand Hearing Before the Review Commission.

{¶ 12} On remand, the Review Commission held another telephone hearing. Beeper Vibes participated at this hearing with its attorney, Belvo (its corporate representative), and its witness Luke Langford. John McAnespie participated and testified at this hearing.

{¶ 13} Langford, who had been Director of Sales and was then Director of Operations, testified that the industry standard was 40 sales per month. No documentary evidence of the existence of this standard was presented at the hearing. Belvo also testified that the industry standard was 40 sales per month.

{¶ 14} On a number of points, the evidence was conflicting at this hearing. McAnespie testified that he was the top salesman at the Lancaster Mall location for thirteen to fourteen months of the eighteen months that he was there. Belvo denied this. McAnespie also testified that he was the top salesperson during the month preceding his discharge. Belvo also denied this. As the Review Commission pointed out in its decision, documents submitted by Beeper Vibes at the first hearing supported McAnespie's claim that he was the top salesperson at the Lancaster Mall during the month of September, 2009, the month preceding his discharge.

{¶ 15} The Review Commission also pointed out that: "Although the employer

has repeatedly cited an industry standard of forty sales per month, the employer has not offered authentication or evidence to support the existence of such a standard."

{¶ 16} Although outside the scope of the limited purpose for which the matter was remanded to the Review Commission, Beeper Vibes offered Belvo's testimony that McAnespie's attitude was the problem:

{¶ 17} His attitude was the problem, his, his lack of, his lack of interest in the job and his, his opinionated angle that he had uh limited his success in our business. He came predetermined that customer's [sic] either did or did not have good credit, based on the fact of where the store was located not based on the individual uh success of, of the sale or the sales process. Uh he always constantly gave excuses why he thought that the location would never succeed. He also, he also did not listen to managements [sic] direction uh he was in belief that he should have been the manager and therefore didn't want to listen to what we had to say and that also affected his sales numbers because he was not coachable.

{¶ 18} By contrast, Langford, Beeper Vibes' other witness, testified as follows:

{¶ 19} "Q. Okay. Did you have an opportunity to personally coach Mr. McAnespie in connection with his sales efforts?

{¶ 20} "A. Uh, I would have to go back and look at records but I worked with him at least three of [sic] four times personally.

{¶ 21} "Q. Okay. And was he receptive to your efforts?

{¶ 22} "A. Uh I believe he was.

{¶ 23} "Q. Okay.

{¶ 24} "A. I believe he uh, he at least like listened to what I had to say."

{¶ 25} McAnespie testified that there were problems at the Lancaster Mall location with inventory in the last several months before his discharge. They had just 23 phones, 10 of which were used, while Verizon, just 80 yards away, had 400. He testified that he brought the inventory problem to management's attention, because the only way to get the problem corrected was to bring it up. Belvo denied that there had ever been a problem with inventory at that location.

{¶ 26} The Review Commission again found that McAnespie had been discharged without just cause, and allowed his claim. Concerning the specific purpose for which the trial court had remanded the matter, the Review Commission found:

In remanding the matter to the Unemployment Compensation Review Commission, the court specifically directed the Review Commission to determine the reasonableness of the minimum monthly sales quota of twenty-five sales. It appears that in establishing a minimum sales level of twenty-five sales, there was no consideration given to either the historical sales at specific locations, an employee's previous sales record, the hours or shifts an employee worked, or the type of sales facility, as the employer operated both storefront and kiosk locations. Although the employer has repeatedly cited an industry standard of forty sales per month, the employer has not offered authentication or evidence to support the existence of such a standard.

The evidence previously submitted [at the prior hearing] in the record establishes that the claimant had the highest sales of the four employees working at the Lancaster location in the month prior to his separation, although

none of the employees met the employer's quota. It further appears that a majority of employees during the same period failed to meet the sales quota as only thirty-two of seventy-seven employees met or exceeded the twenty-five sale-per-month quota.

Given this evidence, the Commission concludes the minimum sales figure of twenty-five sales per month was an arbitrary standard that was unreasonable when applied to the location where the claimant was employed. For this reason, it is concluded the claimant was discharged without just cause in connection with work. No disqualification for benefit rights is available.

### V. Beeper Vibes Appeals Again to the Common Pleas Court.

{¶ 27} Beeper Vibes appealed again to the Montgomery County Common Pleas Court. The trial court affirmed the Review Commission's decision.

{¶ 28} From the judgment of the trial court affirming the Review Commission's decision, Beeper Vibes appeals to this court.

### VI. The Trial Court Did Not Find that Beeper Vibes Failed to Present Evidence of the Applicable Industry Standard.

{¶ 29} Beeper Vibes' First Assignment of Error is as follows:

{¶ 30} "THE TRIAL COURT ERRED BY DETERMINING THAT THE APPELLANT FAILED TO PRESENT EVIDENCE OF THE APPLICABLE INDUSTRY STANDARD."

{¶ 31} In this assignment of error, Beeper Vibes mischaracterizes what the trial court said in its decision. The trial court referred at one point to the fact that "[the] Review Commission noted that Beeper Vibes provided no documentation to support the statement of an industry standard of a forty sales per month quota." This is true both in the sense that the Review Commission did so note in its decision, and in the sense that Beeper Vibes did not provide any documentation to support the existence of the 40-sales-per-month industry standard.

{¶ 32} Beeper Vibes did provide testimony at the hearing that there was an industry standard of 40 sales per month. Neither the trial court nor the Review Commission ever denied that Beeper Vibes had presented this testimony.

{¶ 33} The record does not support this assignment of error, and it is overruled.

### VII.   The Trial Court Did Not Find that Beeper Vibes Had Not Provided Evidence of McAnespie's Bad Attitude.

{¶ 34} Beeper Vibes' Second Assignment of Error is as follows:

{¶ 35} "THE TRIAL COURT ERRED BY DETERMINING THAT APPELLANT DID NOT PROVIDE EVIDENCE OF CLAIMANT'S 'BAD ATTITUDE."

{¶ 36} Despite the fact that it was unrelated to the limited scope of the remand hearing before the Review Commission, Beeper Vibes did present testimony concerning McAnespie's bad attitude, in the form of Belvo's testimony. It appears that Belvo's belief that McAnespie had a bad attitude was based, at least in part, upon the fact that McAnespie

thought that the Lancaster Mall location was not as good, for selling purposes, as other locations. Belvo's testimony that McAnespie had a bad attitude and was "uncoachable" was contradicted by Beeper Vibes' other witness, Langford, who testified that he coached McAnespie, who listened and seemed receptive.

**{¶ 37}** This assignment of error appears to be based upon the following statement in the trial court's decision:

In addition to the proposition that the quota was reasonable and Mr. McAnespie was terminated due to unsuitability for work, Beeper Vibes asserts that Mr. McAnespie's termination was for just cause because Mr. McAnespie's bad attitude resulted in poor sales. Beeper Vibes points out that an employee's bad attitude can be considered fault on part of the employee, and, thus, a just cause for termination. [Footnote omitted.] Beeper Vibes asserts that Mr. McAnespie had a bad attitude which made him uncoachable. *However, a review of the record does not reveal any specific examples of Mr. McAnespie's attitude affecting a particular sale.* [Footnote omitted.] As such, the record does support the Review Commission's determination that Mr. McAnespie was not terminated for just cause. [Emphasis added.]

**{¶ 38}** Again, as with the First Assignment of Error, the record does not support the claimed error. The trial court did not say that there was no evidence of McAnespie's bad attitude; the trial court said, correctly, that no specific examples were provided of McAnespie's attitude affecting a particular sale.

**{¶ 39}** In any event, even Beeper Vibes' own evidence on this point was

conflicting. More importantly, this factual issue was outside the scope of the purpose for which the matter had been remanded to the Review Commission.

{¶ 40} Beeper Vibes' Second Assignment of Error is overruled.

## VIII.  Conclusion.

{¶ 41} Both of Beeper Vibes' assignments of error have been overruled. The Review Commission found that McAnespie was discharged without just cause. There is competent and credible evidence in the record to support that finding. The trial court did not abuse its discretion by affirming the decision of the Review Commission.

{¶ 42} The judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.


Copies mailed to:

Richard B. Reiling
Robin A. Jarvis
Hon. Michael Tucker